**Jens Fuchs**

2022 Blake Street

Berkeley, California 94704

Tel: 510-575-0563

mountain.lion.berkeley@gmail.com

*Pro Se Plaintiff*

**FILED**

MAR -6 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JENS FUCHS,

        Plaintiffs,

        vs.

CITY OF BERKELEY, THOMAS GREGORY,
PAUL BUDDENHAGEN, DAVID WHITE,
BERKELEY POLICE, DOES 1-10

        Defendant.

Case No. **CV26.01997**

**COMPLAINT FOR INJUNCTIVE RELIEF**

**AGT**

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiffs BERKELEY HOMELESS UNION, ADRIEN BOUCHARD, NICHOLAS JOHNSON and FRANK MOORE ("Plaintiffs") complain and allege as follows:

## INTRODUCTION

*This civil rights action seeks declaratory and injunctive relief against the City of Berkeley and its officials for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., and the Fourteenth Amendment to the United States Constitution.*

*Plaintiff Jens Fuchs is an 81-year-old disabled man who has been a resident of Berkeley for 54 years. For the last nine years, he has been unhoused, living in his van and a friend's motorhome on Fourth Street, near Dwight Way in West Berkeley. This location is not random—it is where he has support: a neighbor who provides showers and battery storage, local organizations that bring food, and medical providers who know where to find him. Despite his age and severe disabilities—including recent pacemaker surgery, COPD, chronic pain, and a heart condition causing sudden loss of consciousness—the City has engaged in an escalating campaign of targeted harassment against him.*

*The City has denied Plaintiff's repeated requests for reasonable accommodations to its 72-hour parking rule, despite his doctor's warnings that compliance would endanger his life. It has continued enforcement during the ADA interactive process, refused to consider medical documentation, and offered no alternative accommodations. On January 30, 2026, parking enforcement arrived twice in one day to tow his van, forcing Plaintiff to remain inside his vehicle to physically prevent its seizure.*

*The City selectively enforces its parking laws—aggressively targeting unhoused disabled individuals like Plaintiff while leaving commercial businesses with expired registrations and inoperable vehicles untouched for years. It has never offered Plaintiff shelter, despite knowing of his existence for nine years. Its grievance process is a 60-day black box with no independent oversight.*

*Without court intervention, Plaintiff will be forcibly displaced into hazardous weather conditions, exposed to life-threatening harm, and denied his fundamental civil rights.*

---

**1**

**COMPLAINT FOR INJUNCTIVE RELIEF**

*Plaintiff therefore requests that the Court enter a temporary restraining order and preliminary injunction preserving the status quo at his location on Fourth Street, so that he may have an opportunity to present his case for fuller relief and be protected from the imminent and irreparable injuries he faces.*

## JURISDICTION AND VENUE

*Plaintiffs' claims arise under the laws and Constitution of the United States, including 42 U.S.C. § 12132 and 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).*

*The Federal Rules of Civil Procedure 57 and 65, authorize this Court to grant Plaintiffs the injunctive relief they seek here. An award of attorneys' fees is authorized pursuant to 42 U.S.C. § 1988(b).*

*This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiffs' federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.*

*Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because defendant CITY OF BERKELEY is located in this district and a substantial part of the events and/or omissions were committed in this district.*

*Because the events and omissions giving rise to Plaintiffs' claims occurred in Alameda County, this case should be assigned to the Northern District's Oakland or San Francisco Division, pursuant to N.D. Cal. L.R. 3-2(d).*

## THE PARTIES

*Plaintiff JENS FUCHS is an individual residing in Berkeley, California. He is 81 years old and has been unhoused for nine years. He lives in his van and a friend's motorhome at*

**2**
**COMPLAINT FOR INJUNCTIVE RELIEF**

*Fourth Street, near Dwight Way in West Berkeley. He is a member of the Berkeley Homeless Union.*

*Mailing Address: 2022 Blake StreetBerkeley, CA 94704*

*Email: mountain.lion.berkeley@gmail.com*

*Defendant CITY OF BERKELEY is a municipal corporation organized under the laws of the State of California.*

*Mailing Address: 2180 Milvia St, Berkeley, CA 94704*

*Defendant PAUL BUDDENHAGEN is the City Manager of the City of Berkeley who perpetrates a policy of evicting unhoused disabled Plaintiffs without observing the City of Berkeley's own ADA policies.*

*Mailing Address: 2180 Milvia St, Berkeley, CA 94704*

*Email: pbuddenhagen@berkeleyca.gov*

*Defendant DAVID WHITE is the Deputy City Manager of the City of Berkeley who perpetrates a policy of evicting unhoused disabled Plaintiffs without observing the City of Berkeley's own ADA policies.*

*Mailing Address: 2180 Milvia St, Berkeley, CA 94704*

*Email: dwhite@berkeleyca.gov*

*Defendant THOMAS GREGORY, as the City's ADA Program Coordinator, has repeatedly denied reasonable accommodation requests without proposing alternatives, in direct violation of 28 C.F.R. § 35.130(b)(7).*

*Mailing Address: 2180 Milvia St, Berkeley, CA 94704*

*Email: tgregory@berkeleyca.gov*

*DEFENDANTS DOES 1-10 are public and private parties who are currently unknown to Plaintiff, but will be added in by amendment of the complaint.*

## FACTUAL ALLEGATIONS

*I. PLAINTIFF'S DISABILITIES AND VULNERABILITY*

1. Plaintiff is 81 years old. He has lived in Berkeley for 54 years. For the last nine years, he has been unhoused. Fuchs Decl. ¶ 2.

**3**

**COMPLAINT FOR INJUNCTIVE RELIEF**

2. Plaintiff lives in his van and a friend's motorhome on Fourth Street, near Dwight Way in West Berkeley. This location is not random—it is where he has support: a neighbor who provides showers and battery storage, local organizations that bring food, and medical providers who know where to find him. Fuchs Decl. ¶ 2; Prado Decl. ¶¶ 5-8.

3. Plaintiff has multiple severe and permanent disabilities, including:

    a) Complete heart block requiring pacemaker surgery (December 2025), with strict post-operative instructions not to lift more than 10 pounds or raise his left arm above shoulder level;

    b) Chronic obstructive pulmonary disease (COPD) and emphysema;

    c) Chronic muscle pain, weakness, and spasms;

    d) Chronic lower back pain;

    e) Chronic fatigue;

    f) A heart condition (syncope) that causes him to lose consciousness involuntarily and suddenly, without warning, which has caused him to sustain skull fractures and other serious injuries;

    g) Obsessive Compulsive Disorder (OCD), which impedes task completion;

    h) Post-Traumatic Stress Disorder (PTSD);

    i) Depression;

    j) Anxiety;

    k) Brain fog. Fuchs Decl. ¶ 21; Prado Decl. ¶ 13; Exhibit A.

4. According to his treating physician, Dr. Onagh Mackenzie of Lifelong Medical Street Team, Plaintiff has been hospitalized twice in the past three months for complete heart block—a life-threatening condition that causes syncope, collapse, and even death. Exhibit A at 1. During one episode, he sustained a traumatic accident and fractured multiple bones. Id. He required emergency heart surgery to place a pacemaker and continues to experience ongoing symptoms and complications. Id.

5. Dr. Mackenzie opines that Plaintiff's "serious medical conditions require close follow-up, lifting and exertion restrictions, and rehabilitation which cannot be adhered to by completing

**COMPLAINT FOR INJUNCTIVE RELIEF**

repairs on his van, moving heavy items, or losing regular contact with his care team." Exhibit A at 2. In her medical opinion, these restrictions are imperative—not optional—and violating them would subject Plaintiff to serious medical complications, harm, and even death. Id.

6. Plaintiff's van is not merely a vehicle—it is a critical component of his shelter system and medical care. Due to his disabilities, he has not been able to organize the RV, which only provides a place to lie down. Fuchs Decl. ¶ 24.

7. The van is Plaintiff's only accessible seated space, essential for managing his chronic pain, respiratory issues, and mobility limitations. Fuchs Decl. ¶¶ 12-13; Prado Decl. ¶ 43.

8. The RV is registered to a friend and may need to be returned. The van is Plaintiff's only independently owned vehicle and serves as his indispensable long-term safety net. Fuchs Decl. ¶ 24; Prado Decl. ¶ 44.

9. This winter, the Bay Area experienced its first winter weather advisory in three years— freezing temperatures, thunderstorms and relentless rain. A National Weather Service meteorologist described the conditions as "really nasty." Exhibit B; Prado Decl. ¶ 4.

10. Cold weather exacerbates Plaintiff's chronic pain, fatigue, and respiratory illnesses (COPD/emphysema). Fuchs Decl. ¶ 11; Exhibit A at 1.

11. Winter is not over. The threat of additional storms remains. Plaintiff must have his shelter before the next weather emergency arrives, not after.

12. **The City's Actions Constitute a State-Created Danger:** Like in *Alfred v. City of Vallejo* (2025) by forcing Plaintiffs into life-threatening conditions without a safe alternative, the City has created a *state-created danger* under the Fourteenth Amendment's Due Process Clause. The government cannot take actions that affirmatively place individuals in foreseeable harm, yet the City's abatement policy does exactly that by stripping vulnerable individuals of their only protection against the elements.

## II. THE CITY HAS VIOLATED THE AMERICANS WITH DISABILITIES ACT

13. On or about December 16, 2025, Plaintiff was hospitalized for evaluation and treatment related to his heart condition (syncope), which causes sudden involuntary loss of consciousness. Fuchs Decl. ¶ 26.

**COMPLAINT FOR INJUNCTIVE RELIEF**

14. When he was discharged and returned to his vehicles, he discovered that during his absence, the City had placed a 72-hour notice on his RV. Fuchs Decl. ¶ 27.

15. Recognizing the danger, Plaintiff asked his medical provider, Dr. Onagh Mackenzie, to intervene and request an accommodation. Fuchs Decl. ¶ 28.

16. On or about December 18, 2025, Dr. Mackenzie called Berkeley parking enforcement directly to request an accommodation. She explained: (a) Plaintiff had just been hospitalized for a condition causing sudden, involuntary loss of consciousness; (b) the physical act of moving his vehicles—packing, lifting, carrying batteries—could trigger another episode and cause serious injury; and (c) he needed additional time to recover and comply safely. Fuchs Decl. ¶ 29.

17. Dr. Mackenzie explicitly explained the nexus between Plaintiff's disabilities and the 72-hour rule: the very tasks required to move the vehicles were the tasks most likely to aggravate his condition and cause him harm. Fuchs Decl. ¶ 30.

18. The City's response was three additional days. Fuchs Decl. ¶ 31. This was not an accommodation—it merely reset the clock for a man just released from the hospital, whose own doctor called to explain why the standard timeline was dangerous.

19. On January 7, 2026, Plaintiff—through his representative at the Berkeley Homeless Union ("BHU")—submitted a formal request for a reasonable accommodation under Title II of the ADA. Exhibit C; Prado Decl. ¶ 11. Because the City has no streamlined process for unhoused individuals to make such requests, Plaintiff used a BHU request form. Fuchs Decl. ¶ 32; Exhibit D.

20. The request sought an ongoing accommodation to the City's 72-hour parking rule, asking that Plaintiff be permitted to move his vehicles every three weeks instead of every 72 hours. Exhibit C at 1-2; Prado Decl. ¶ 12.

21. The request detailed Plaintiff's disabilities and explained why the 72-hour rule is medically unsafe: moving requires packing belongings, carrying heavy batteries (against doctor's orders), starting cold engines, and repacking in cold weather—tasks that risk wound rupture, respiratory distress, and loss of consciousness. Exhibit C at 1, 5; Prado Decl. ¶ 14.

**COMPLAINT FOR INJUNCTIVE RELIEF**

22. The request also explained that Plaintiff's current location provides critical support—a neighbor offering showers, charging, and storage—that displacement would destroy. Exhibit C at 1; Prado Decl. ¶ 15.

23. Plaintiff provided contact information for his doctor and requested that enforcement be paused while the City considered his request. Prado Decl. ¶ 16; Exhibit D.

24. On January 8, 2026, ADA Coordinator Thomas Gregory acknowledged the request and sought clarification. Exhibit C at 2.

25. On January 9, 2026, BHU confirmed that Plaintiff was requesting an ongoing accommodation to move every three weeks, as his disabilities are permanent. Exhibit C at 3.

26. On January 15, 2026, after a three-way call with Mr. Gregory and Plaintiff, BHU sent a detailed email further explaining why the 72-hour rule is medically unsafe, including the need to remove belongings, carry heavy batteries against doctor's orders, and the risk of injury, wound rupture, and loss of consciousness. Exhibit C at 5; Prado Decl. ¶ 18.

27. Throughout this process, the City never paused enforcement. Prado Decl. ¶ 19. On January 14—while the City was still reviewing his request—Plaintiff received another 72-hour notice on his van. Fuchs Decl. ¶ 37; Exhibit E.

28. Enforcement escalated. On January 22, Officer Palmer (818) approached Plaintiff's van. Because Plaintiff was inside, Palmer did not issue a citation but instead gave him a red tag inside the van, chalked his tires, and warned him explicitly that if the van were still on the street on January 23, he would need to tow it. Fuchs Decl. ¶ 38.

29. On January 28, both vehicles received another 72-hour warning. Fuchs Decl. ¶ 39.

30. On January 31, at 8:15 AM—three and a half hours before the 72-hour period had expired—an officer specifically returned to check if Plaintiff's van had been moved since the January 28 marking. Fuchs Decl. ¶ 40. This demonstrated targeted, relentless monitoring.

31. On January 23, 2026, Mr. Gregory issued the City's formal denial. Exhibit C at 8-10; Prado Decl. ¶ 22. The denial gave shifting reasons:

**COMPLAINT FOR INJUNCTIVE RELIEF**

32. First, the City claimed no "connection" had been established between Plaintiff's disabilities and the 72-hour rule, arguing the rule "does not regulate how a vehicle is prepared for movement" or "how property is stored." Exhibit C at 9; Prado Decl. ¶ 23.

33. Second, the City claimed that even if a connection existed, granting the request would be a "fundamental alteration" of its parking program and an "undue administrative burden." Exhibit C at 9-10; Prado Decl. ¶ 24.

34. Third, the City denied Plaintiff's request for protection from towing due to expired registration, claiming this was based on "financial hardship" rather than disability. Exhibit C at 10; Prado Decl. ¶ 25.

35. The denial offered no alternative accommodation. It merely referred Plaintiff to Alameda County's Safe Parking Program—a different entity's social service, not a City-operated alternative. Exhibit C at 10; Prado Decl. ¶ 26.

36. The final determination was made by the City Manager's office. Prado Decl. ¶ 28

37. On January 30, 2026, BHU informed the City that Dr. Onagh Mackenzie was preparing a detailed medical letter establishing the disability nexus the City had claimed was missing. Exhibit C at 11; Prado Decl. ¶ 31.

38. BHU requested that the City pause enforcement and reconsider once the medical letter was received. Exhibit C at 11-12; Prado Decl. ¶ 32.

39. The City refused. On January 30, Mr. Gregory responded that the medical documentation "would not impact the City's decisions" because the denial was based on fundamental alteration and undue burden—not lack of nexus. Exhibit C at 13; Prado Decl. ¶ 33. This directly contradicted the January 23 letter, which had explicitly cited the lack of connection as a basis for denial. Exhibit C at 9.

### III. THE CITY'S ENFORCEMENT ESCALATED

40. On January 31, 2026—the day after BHU requested reconsideration—parking enforcement arrived twice in one day to tow Plaintiff's van. Fuchs Decl. ¶ 8; Prado Decl. ¶ 35.

**COMPLAINT FOR INJUNCTIVE RELIEF**

41. Plaintiff was forced to remain inside his vehicle to physically prevent its seizure. Prado Decl. ¶ 36. This is a form of coercion that traps an 81-year-old disabled man in a state of constant fear and confinement.

42. After these attempts, Plaintiff became afraid to leave his van to obtain food from nearby churches and nonprofits, fearing he would return to find it gone. Fuchs Decl. ¶ 45; Prado Decl. ¶ 37. His nutrition has suffered, and he sometimes goes hungry for days. Prado Decl. ¶ 37.

43. Plaintiff has experienced "deep, dark despair" and suicidal ideation. Fuchs Decl. ¶¶ 44, 48; Prado Decl. ¶ 38.

44. After the two attempted tows on January 30, Plaintiff was able to temporarily park his van in an acquaintance's driveway. Fuchs Decl. ¶ 8; Prado Decl. ¶ 55. This arrangement was always temporary and has now ended. Fuchs Decl. ¶ 8.

45. Plaintiff's van must now return to its parking spot on Fourth Street within days. Fuchs Decl. ¶ 8. Based on the City's pattern of conduct over the past three months, enforcement will resume immediately upon its return.

46. Losing the van would render Plaintiff without adequate shelter and directly exacerbate his disabilities through increased exposure, stress, instability, and physical hardship—constituting irreparable harm. Exhibit A at 2.

47. In all communications with the City on Plaintiff's behalf, and throughout his nine years unhoused in Berkeley, the City has never once offered him shelter. Fuchs Decl. ¶ 50; Prado Decl. ¶ 52. Not a bed. Not a safe parking space. Not a referral that guaranteed placement.

48. The City's Homeless Response Team ("HRT") exercises complete discretion over who receives shelter referrals, with no public, transparent process for an unhoused person to request shelter. Prado Decl. ¶¶ 53-54. Plaintiff has never been offered such services.

49. The City's January 23 referral to Alameda County's Safe Parking Program was not an offer of shelter. It was a link to a website for a different entity's program, with no guarantee of placement. Prado Decl. ¶ 26.

50. The City's enforcement against Plaintiff is not uniform. There are other vehicles in the area with expired registration that are not being targeted. Fuchs Decl. ¶ 51; Prado Decl. ¶ 39.

51. The Tesla service center at 901 Gilman Street provides a stark example. For years, this business has parked vehicles on public streets that are in disrepair, with expired registrations, and missing license plates. Prado Decl. ¶ 40. These vehicles have never been towed since the business opened in late 2018. Prado Decl. ¶ 41. The City has looked the other way for more than seven years.

52. This contrast demonstrates that the City exercises discretion in enforcement but chooses to apply the full force of the law against an 81-year-old disabled unhoused man while leaving a commercial business's violative vehicles untouched. Prado Decl. ¶ 42.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Exposure to State-Created Danger
### Under the Fourteenth Amendment to the U.S. Constitution
### Pursuant to 42 U.S.C. § 1983

Plaintiff re-allege and incorporate by reference all the above allegations as though fully set forth herein.

Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. See U.S. Const. amend. XIV.

Local governments violate the substantive due process rights of unhoused people when they place unhoused individuals in more vulnerable situations by confiscating the survival belongings that they use for shelter, warmth, and protection from the elements.

Defendant CITY OF BERKELEY has a policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, that is necessary for their protection. Defendant CITY OF BERKELEY engages in these practices without ensuring that shelter and/or housing options are available to unhoused individuals.

COMPLAINT FOR INJUNCTIVE RELIEF

Without any other available option for shelter and without their vehicles, tents and survival gear—now destroyed—unhoused residents are forced to live exposed to the elements, without protection from heat, cold, wind, and rain. This severely jeopardizes their physical and mental health.

Defendant CITY OF BERKELEY's actions have placed Plaintiffs and others in a more dangerous situation than the one in which they were found and created and exposed them to a danger which they would not have otherwise faced.

Defendant CITY OF BERKELEY knows or should know that its actions endanger the health and safety of unhoused individuals, and defendant CITY OF BERKELEY has acted with deliberate indifference to this danger. Defendant CITY OF BERKELEY's conduct is shocking to the conscience and further imperils the health and safety of unhoused people.

Defendant CITY OF BERKELEY's policies and practices have and will continue to put Plaintiff in immediate danger in violation of their substantive due process rights.

WHEREFORE, Plaintiff pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### Exposure to State-Created Danger
### Under Article I, § 7(a) of the California Constitution
### Pursuant to 42 U.S.C. § 1983

Plaintiff re-allege and incorporate by reference all the above allegations as though fully set forth herein.

Governmental action that affirmatively places a person in a position of danger deprives that person of substantive due process rights guaranteed by the California Constitution. Cal. Const. art. I, § 7(a). The substantive due process protections under the California Constitution are at least as expansive as those under the U.S. Constitution.

Defendant CITY OF BERKELEY's policy, custom, and practice of removing unhoused people from public spaces and of seizing and destroying their personal property, such as tents and other survival gear, endangers the health and safety of unhoused people in a way that shocks the conscience. Defendant CITY OF BERKELEY knows or should know that its actions endanger the health and safety of unhoused individuals.

Defendant CITY OF BERKELEY's policies and practices have and will continue to put Plaintiffs in immediate danger in violation of their substantive due process rights under the California Constitution.

WHEREFORE, Plaintiff pray for relief as set forth below.

### THIRD CAUSE OF ACTION
**Property Destruction: Unreasonable Search and Seizure
Under the Fourth Amendment to the U.S. Constitution
Pursuant to 42 U.S.C. § 1983**

Plaintiff re-allege and incorporate by reference all the above allegations as though fully set forth herein.

The Fourth Amendment prohibits local governments from summarily seizing and destroying the personal property of unhoused individuals. *Garcia v. City of L.A.*, 11 F.4th 1113, 1124 (9th Cir. 2021) ("our prior caselaw states clearly that the government may not summarily destroy the unabandoned personal property of homeless individuals that is kept in public areas").

Defendant CITY OF BERKELEY has an unwritten policy, custom, and practice of seizing and destroying unhoused people's personal belongings. Defendant CITY OF BERKELEY destroys such property even if that property poses no threat to public health and does not constitute evidence of a crime.

Defendant CITY OF BERKELEY's policy, custom, and practice is to evict unhoused residents and, in the process, to destroy their belongings. Witnesses who have worked in the community for many years have observed the Department of Public Works demolishing people's shelters, confiscating their tents, and leaving people exposed to the elements. This has been done both in the pouring rain and in extreme heat. Witnesses have also observed employees of defendant CITY OF BERKELEY destroying property even while the owners of that property have been telling them that it belongs to them and that they want to keep it. Defendant CITY OF BERKELEY's unconstitutional policies and practices continue, subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and destroyed in violation of the Fourth Amendment.

WHEREFORE, Plaintiff pray for relief as set forth below.

12

COMPLAINT FOR INJUNCTIVE RELIEF

## FOURTH CAUSE OF ACTION
### Property Destruction: Unreasonable Search and Seizure
### Under Article I, § 13 of the California Constitution

Plaintiff re-allege and incorporate by reference all the above allegations as though fully set forth herein.

The California Constitution involves even greater protections than the Fourth Amendment with respect to property seizures. See Cal. Const. art. I, § 13.

Despite Defendant CITY OF BERKELEY's written policies to the contrary, it has an unwritten policy, custom, and practice of seizing and destroying unhoused people's personal belongings via encampment abatements, closures and parking enforcement. Defendant CITY OF BERKELEY destroys such property even if that property poses no threat to public health and does not constitute evidence of a crime.

Defendant CITY OF BERKELEY's unconstitutional policies and practices continue, subjecting Plaintiffs to persistent and imminent threat of having their personal property seized and destroyed in clear violation of the more expansive protections under Article I, Section 13 of the California Constitution.

WHEREFORE, Plaintiff pray for relief as set forth below.

## FIFTH CAUSE OF ACTION
### Discrimination Against Persons with Disabilities
### Under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.

Plaintiff re-allege and incorporate by reference all the above allegations as though fully set forth herein.

Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Discrimination under Title II of the ADA includes administration of programs in a way that has a discriminatory effect on people with disabilities, or that has the "effect of defeating or substantially impairing the

accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." 28 C.F.R. § 35.130 (b)(3)(ii).

A local government's removal of homeless individuals and their possessions from public property—as well as the provision of outreach, services, or shelter to unhoused individuals—are programs, services, and/or activities covered by Title II of the ADA.

Failure to provide proper assistance, additional time, or other support to disabled individuals when demanding that unhoused people remove themselves or their belongings from public space is a violation of the ADA.

Failing to provide shelter options to unhoused people that meet their disability needs is also a violation of the ADA because it means that shelter is functionally unavailable to them because of their disability.

Defendant CITY OF BERKELEY discriminates against unhoused individuals by failing to provide adequate notice, time, and assistance to unhoused people with disabilities who are forced to move themselves or their belongings from public space in response to defendant CITY OF BERKELEY's homeless sweeps.

Forcibly removing unhoused residents without first identifying and offering alternative shelter or services that meet the individualized needs of people with disabilities does not serve any sufficiently compelling or bona fide and legitimate interest of defendant CITY OF BERKELEY, and less discriminatory options are available to defendant CITY OF BERKELEY to achieve any interests it claims it is trying to advance.

Plaintiff JENS FUCHS have physical and mental disabilities and have been, and will be, injured by Defendant CITY OF BERKELEY's discriminatory response to unhoused residents with disabilities.

## SIXTH CAUSE OF ACTION
### Discrimination Against Persons With Disabilities
### Under Cal. Gov. Code § 11135

Plaintif re-allege and incorporate by reference all the above allegations as though fully set forth herein.

COMPLAINT FOR INJUNCTIVE RELIEF

Cal. Gov. Code § 11135 is intended to prohibit all forms of discrimination prohibited under Title II of the Americans with Disabilities Act and, where possible, to be more protective of people with disabilities. See Cal. Gov. Code § 11135(b).

By administering its programs for unhoused people and response to homelessness in a manner that has a discriminatory effect on people with disabilities, DEFENDANT CITY OF BERKELEY has violated, and continue to violate, Section 11135.

Plaintiff JENS FUCHS have physical and mental disabilities and has been injured by Defendant CITY OF BERKELEY's discriminatory response to unhoused residents with disabilities. Members of the Berkeley Homeless Union living in the noticed area also have disabilities and have made accommodation requests that have not been addressed to date.

WHEREFORE, Plaintiff pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

### A. TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Enter a Temporary Restraining Order and Preliminary Injunction:

Prohibiting Defendants from towing, impounding, seizing, or threatening to tow Plaintiff's motorhome and/or van;

Prohibiting Defendants from issuing citations, fines, or penalties for violations of the 72-hour parking ordinance against Plaintiff's vehicles;

Prohibiting Defendants from chalking, tagging, or otherwise marking Plaintiff's vehicles for enforcement purposes;

Prohibiting Defendants from enforcing vehicle registration requirements, including smog certificate requirements, against Plaintiff's van in a manner that would result in its removal or impoundment;

Prohibiting Defendants from conducting any "sweeps," cleanings, or enforcement actions that would displace Plaintiff from his current location on Fourth Street, between Dwight and Channing Way, Berkeley, California;

Prohibiting Defendants from interfering with Plaintiff's access to water, sanitation, or other basic necessities;

Prohibiting Defendants from removing or destroying Plaintiff's belongings;

Prohibiting Defendants from taking any adverse enforcement actions against Plaintiff because he has sought accommodation, filed this lawsuit, or asserted his rights under the ADA or Constitution.

### B. DECLARATORY RELIEF

Declare that Defendants' denial of Plaintiff's ADA accommodation request, continuation of enforcement during the interactive process, refusal to consider medical documentation, and failure to offer alternative accommodations violate Title II of the Americans with Disabilities Act;

Declare that Defendants' selective enforcement of parking laws against unhoused individuals while exercising discretion in favor of commercial entities violates the Equal Protection Clause;

Declare that Defendants' creation of danger through affirmative conduct, with deliberate indifference to known risks, violates the Due Process Clause under the state-created danger doctrine;

Declare that Defendants' failure to provide adequate notice and a meaningful opportunity to be heard before seizing Plaintiff's property violates the Due Process Clause;

Declare that Defendants' attempt to displace Plaintiff without providing lawful alternatives punishes him for his unhoused status in violation of the Due Process Clause.

### C. INJUNCTIVE RELIEF

Order Defendants to engage in a good-faith interactive process to provide Plaintiff with a reasonable accommodation to the 72-hour parking rule, including but not limited to permitting him to move his vehicles every three weeks;

Order Defendants to provide Plaintiff with ADA-compliant alternative housing if no accommodation to the 72-hour rule is feasible, with such shelter to be located within the City of Berkeley, accessible to his medical providers and support network, and with a written guarantee of placement;

Order Defendants to implement a clear, accessible, and timely appeals process for denied ADA accommodations, with response times no longer than 7 days for emergency requests,

**COMPLAINT FOR INJUNCTIVE RELIEF**

independent review by an officer or body not involved in the initial denial, and publicly available criteria for evaluating accommodation requests.

### D. ATTORNEYS' FEES AND COSTS

Award Plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 12205 and 42 U.S.C. § 1988.

### E. FURTHER RELIEF

Grant such other and further relief as this Court deems just and proper.

Dated: March 6, 2026

Respectfully submitted,

_____

JENS FUCHS

**COMPLAINT FOR INJUNCTIVE RELIEF**

RECEIVED

2026 MAR -6  P 4:41

CLERK, US DISTRICT COURT
NO. DIST. OF CA.